**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**
**MANHATTAN DIVISION**

| | | |
|---|---|---|
| ACTIVEHOURS, INC. D/B/A EARNIN, | § | |
| | § | |
| Plaintiff, | § | CASE NO.: 1:26-cv-07193 |
| | § | |
| v. | § | |
| | § | **MEMORANDUM OF LAW IN** |
| HILLARY FAJARDO, AN INDIVIDUAL, | § | **SUPPORT OF DEFENDANTS'** |
| STEVEN AVILES, AN INDIVIDUAL, | § | **MOTION TO DISMISS OR, IN THE** |
| LENNY LORENZI, AN INDIVIDUAL, | § | **ALTERNATIVE, TO STRIKE** |
| EMILY JEREZ, AN INDIVIDUAL, | § | **PLAINTIFF'S COMPLAINT** |
| DONALD BOAKYE, AN INDIVIDUAL, | § | |
| | § | |
| Defendants. | § | |

# TABLE OF CONTENTS


**Page**

INTRODUCTION ..... 1

STATEMENT OF FACTS ..... 2

A. The Parties ..... 2

B. The Operative Terms ..... 2

C. EarnIn Changed the Designated Arbitration Provider. ..... 3

D. Defendants File Demands Before the AAA. ..... 3

E. Prior Litigation Confirms Defendants' Arbitration Demands Are Supported by Applicable Law. ..... 4

F. The AAA Proceedings and EarnIn's Request to Halt Them ..... 5

LEGAL STANDARD ..... 6

ARGUMENT ..... 6

I. THE COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(B)(1) FOR LACK OF SUBJECT-MATTER JURISDICTION. ..... 6

A. The Complaint Presents a State-Law Contract Dispute, Not a Federal Cause of Action. ..... 6

B. Section 2201(a) Supplies a Remedy, Not Jurisdiction. ..... 8

C. The FAA Supplies No Jurisdiction Over a Declaratory Action About Arbitration. ..... 9

D. Defendants' TILA and EFTA Arbitration Claims Do Not Create Jurisdiction Over EarnIn's Contract Claim. ..... 11

E. EarnIn Has Not Pleaded Diversity Jurisdiction. ..... 13

II. IF JURISDICTION EXISTS, THE COURT SHOULD DECLINE DISCRETIONARY DECLARATORY RELIEF UNDER SECTION 2201(A) OR STAY THIS ACTION. ..... 14

A. The Pending AAA Proceeding Is the Better Forum for EarnIn's Procedural Objections. ..... 15

B. The Delegation Provisions Confirm That Threshold Objections Belong in Arbitration. ..... 17

III. ALTERNATIVELY, THE COURT SHOULD STRIKE IMMATERIAL AND PREJUDICIAL ALLEGATIONS UNDER RULE 12(F). ..... 18

A. Rule 12(f) Authorizes Targeted Removal of Immaterial and Prejudicial Allegations. ..... 19

B. Allegations About Counsel and Nonparty Claimants Are Immaterial to the Five Defendants' Contractual Obligations ..... 20

C. The Challenged Passages Invite Collateral Disputes Rather Than Resolve Contractual Assent. ..... 21

D. Retaining the Allegations Would Prejudice Defendants, and No Background or Equitable Rationale Justifies Them. ..... 25

CONCLUSION ..... 26

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Abernathy v. DoorDash, Inc.*,
438 F. Supp. 3d 1062 (N.D. Cal. 2020) ........................................................ 19

*Admiral Ins. Co. v. Niagara Transformer Corp.*,
57 F.4th 85 (2d Cir. 2023) ........................................................ 14, 17, 18

*Amaya v. Ballyshear LLC*,
340 F. Supp. 3d 215 (E.D.N.Y. 2018) ........................................................ 20

*AMTAX Holdings 227, LLC v. CohnReznick LLP*,
136 F.4th 32 (2d Cir. 2025) ........................................................ 7, 11, 12

*Anderson v. Davis Polk & Wardwell LLP*,
850 F. Supp. 2d 392 (S.D.N.Y. 2012) ........................................................ 25

*Ascension Data & Analytics, L.L.C. v. Pairprep, Inc.*,
105 F.4th 749 (5th Cir.), *cert. denied*, 145 S. Ct. 595 (2024) ........................................................ 10

*Ascension Data & Analytics, LLC v. Pairprep, Inc.*,
No. 3:23-CV-00552-N, 2023 WL 5945859 (N.D. Tex. Sept. 11, 2023), *aff'd*,
105 F.4th 749 (5th Cir.), *cert denied*, 145 S. Ct. 595 (2024) ........................................................ 10

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ........................................................ 21

*Badgerow v. Walters*,
596 U.S. 1 (2022) ........................................................ *passim*

*Bayerische Landesbank, N.Y. Branch v. Aladdin Cap. Mgmt. LLC*,
692 F.3d 42 (2d Cir. 2012) ........................................................ 13

*Birner v. Kensington Vanguard Holdings, LLC*,
2025 WL 963311 (S.D.N.Y. Mar. 31, 2025) ........................................................ 25

*Brown v. Maxwell*,
929 F.3d 41 (2d Cir. 2019) ........................................................ 20, 25

*In re Bystolic Antitrust Litig.*,
2020 WL 6700830 (S.D.N.Y. Nov. 12, 2020) ........................................................ 18

*Canada Life Assurance Co. v. Converium Rückversicherung (Deutschland) AG*,
335 F.3d 52 (2d Cir. 2003) ........................................................ 11

*Canedy v. Liberty Mut. Ins. Co.*,
126 F.3d 100 (2d Cir. 1997)....13

*Carter v. HealthPort Techns., LLC*,
822 F.3d 47 (2d Cir. 2016)....6

*Coinbase, Inc. v. Suski*,
602 U.S. 143 (2024)....18

*Correspondent Servs. Corp. v. First Equities Corp. of Fla.*,
442 F.3d 767 (2d Cir. 2006)....8

*Palazzo ex rel. Delmage v. Corio*,
232 F.3d 38 (2d Cir. 2000)....13

*Dow Jones & Co. v. Harrods Ltd.*,
346 F.3d 357 (2d Cir. 2003)....14, 17

*In re Facebook Biometric Information Privacy Litig.*,
522 F. Supp. 3d 617 (N.D. Cal. 2021), *aff'd,* 2022 WL 822923
(9th Cir. Mar. 17, 2022) ....19

*Fracasse v. People's United Bank*,
747 F.3d 141 (2d Cir. 2014)....11, 12

*Frasco v. Flo Health, Inc.*,
No. 21-cv-00757-JD (N.D. Cal. Sept. 17, 2025) ....19

*Frazier v. X Corp*.,
155 F.4th 87 (2d Cir. 2025) ....10, 16

*Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc.*,
697 F.3d 59 (2d Cir. 2012)....8, 9, 13

*Goldman, Sachs & Co. v. Golden Empire Schs. Fin. Auth.*,
764 F.3d 210 (2d Cir. 2014)....10

*Golubiewski v. Activehours, Inc.*,
2025 WL 2484192 (M.D. Pa. Aug. 28, 2025) ....4

*In re Google Assistant Privacy Litig.*,
2025 WL 510435 (N.D. Cal. Feb. 14, 2025) ....19

*Gunn v. Minton*,
568 U.S. 251 (2013)....7, 11

*Heckman v. Live Nation Ent., Inc.*,
120 F.4th 670 (9th Cir. 2024), *cert. denied*, 146 S. Ct. 96 (2025)....7, 21

*In re IBM Arb. Agreement Litig.*,
76 F.4th 74 (2d Cir. 2023) ....................22

*In re IBM Arb. Agreement Litig.*,
2022 WL 2752618 (S.D.N.Y. July 14, 2022), *aff'd*, 76 F.4th 74 (2d Cir. 2023) ....................14

*Jennings v. Vandergriff Honda*,
2026 WL 2594312 (5th Cir. Sept. 2, 2026) ....................12

*Johnson v. Activehours, Inc.*,
2025 WL 2299425 (D. Md. Aug. 8, 2025) ....................4

*Jules v. Andre Balazs Props.*,
608 U.S. 200 (2026)....................10

*Leopard Marine & Trading, Ltd. v. Easy St. Ltd.*,
896 F.3d 174 (2d Cir. 2018)....................8

*Lipsky v. Commonwealth United Corp.*,
551 F.2d 887 (2d Cir. 1976)....................20, 23

*Lowe v. MoneyLion Techs. Inc.*,
822 F. Supp. 3d 374 (S.D.N.Y. 2026), *appeal docketed,* No. 26-655 (2d Cir.
Mar. 18, 2026)....................4

*Lynch v. Southampton Animal Shelter Found., Inc.*,
278 F.R.D. 55 (E.D.N.Y. 2011) ....................20, 23, 26

*Makarova v. United States*,
201 F.3d 110 (2d Cir. 2000)....................5, 13

*Moss v. Klover Holdings, Inc.*,
2026 WL 622653 (N.D. Ill. Mar. 5, 2026)....................4

*NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*,
770 F.3d 1010 (2d Cir. 2014)....................9

*National Union Fire Insurance Co. of Pittsburgh, Pa. v. Karp*,
108 F.3d 17 (2d Cir. 1997)....................15

*New York v. Shinnecock Indian Nation*,
686 F.3d 133 (2d Cir. 2012)....................11

*Orubo v. Activehours, Inc.,*
780 F. Supp. 3d 927 (N.D. Cal. 2025) ....................4

*Perpetual Sec., Inc. v. Tang*,
290 F.3d 132 (2d Cir. 2002)....................9

*Postmates Inc. v. 10,356 Individuals*,
2020 WL 1908302 (C.D. Cal. Apr. 15, 2020) ....................19

*Radtke v. Regeneron Pharms., Inc.*,
2025 WL 1906677 (S.D.N.Y. July 10, 2025) ....................18

*Ramirez v. Activehours, Inc.*,
828 F. Supp. 3d 1040 (N.D. Cal. 2026) ....................4

*Russell v. Dave Inc.*,
812 F. Supp. 3d 998 (C.D. Cal. 2025), *appeal docketed*, No. 26-12 (9th Cir. Jan. 2, 2026) ....................4

*Schnabel v. Trilegiant Corp.*,
697 F.3d 110 (2d Cir. 2012) ....................7, 12

*Skelly Oil Co. v. Phillips Petroleum Co.*,
339 U.S. 667 (1950) ....................8

*Specht v. Netscape Commc'ns Corp.*,
306 F.3d 17 (2d Cir. 2002) ....................7

*Stafford v. Int'l Bus. Machs. Corp.*,
78 F.4th 62 (2d Cir. 2023) ....................22

*T.B. Harms Co. v. Eliscu*,
339 F.2d 823 (2d Cir. 1964) ....................11

*Taylor v. Sturgell*,
553 U.S. 880 (2008) ....................21, 26

*Vaden v. Discover Bank*,
556 U.S. 49 (2009) ....................9

*Wilton v. Seven Falls Co.*,
515 U.S. 277 (1995) ....................14

**Statutes & Other Authorities**

28 U.S.C. § 1331 ....................6

28 U.S.C. § 1332(c)(1) ....................13

28 U.S.C. § 1653 ....................13

Declaratory Judgment Act, 28 U.S.C. § 2201 .................... *passim*

Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. §§ 1693-1693r .................... *passim*

Fair Labor Standards Act, 29 U.S.C. § 201 ....................11, 12

Federal Arbitration Act § 4 .................... *passim*

Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 .................... *passim*

Regulation Z, 90 Fed. Reg. 60069-01 (Dec. 23, 2025)....................4

Fed. R. Civ. P. Rule 12 .................... *passim*

Fed. R. Civ. P. 26(b)(3)(B) ....................23

Cal. Civ. Proc. Code §§ 1281.97–1281.98 ....................21

Defendants Hillary Fajardo, Steven Aviles, Lenny Lorenzi, Emily Jerez and Donald Boakye ("Defendants") submit this memorandum in support of their motion to dismiss or, alternatively, to strike the complaint of Plaintiff Activehours, Inc. d/b/a EarnIn ("EarnIn").

## INTRODUCTION

Stripped of its irrelevant allegations about nonparties, EarnIn's complaint presents a straightforward question of state contract law: which of two versions of EarnIn's Terms of Service governs its relationship with five customers. EarnIn pleads no federal claim. It does not invoke diversity jurisdiction or plead the facts diversity requires. It relies instead on the Declaratory Judgment Act, 28 U.S.C. § 2201 and on the federal statutes underlying Defendants' arbitration claims. Neither works. The Declaratory Judgment Act does not confer jurisdiction, and EarnIn cannot "look through" Defendants' demands because no one seeks relief under Section 4 of the Federal Arbitration Act ("FAA"). The Court should dismiss this action for lack of subject-matter jurisdiction.

Even if jurisdiction exists, the Court should decline to entertain this action. Declaratory relief is discretionary, and an existing proceeding offers a better way to resolve this dispute. The pending American Arbitration Association ("AAA") proceeding is that proceeding. The AAA has accepted administration of Defendants' arbitrations, both sides have paid their initiation fees, and a Process Arbitrator may resolve EarnIn's objections about filing requirements, conditions precedent, and which demands belong in the mass arbitration. At a minimum, the Court should stay this action pending the AAA proceedings.

Alternatively, the Court should strike the Complaint's immaterial and prejudicial allegations under Rule 12(f). EarnIn devotes much of its pleading to accusations about counsel's motives and recruitment practices. Those accusations have no bearing on the only question EarnIn presents: which version of its terms governs. Defendants pursued individual arbitrations under the

agreement they contend governs their claims. Having drafted terms requiring individual arbitration, EarnIn now disparages counsel and nonparty claimants for using the very mechanism it prescribed. Those allegations serve no purpose but to prejudice Defendants, and they should be stricken.

## STATEMENT OF FACTS

### A. The Parties

Defendants reside in New York and filed individual arbitration demands against EarnIn before the AAA on June 17, 2026. Compl. ¶¶ 20, 74; Hoffman Decl. ¶ 2, Ex. A (Demands).

Plaintiff EarnIn alleges that it is "a financial technology company domiciled in Mountain View, California." Compl. ¶ 23. The Complaint does not allege EarnIn's State of incorporation. EarnIn offers users short-term cash advances tied to their anticipated paychecks, which it calls "Cash Out." *Id.* Federal courts, including several that addressed EarnIn's own product, have held that consumers plausibly alleged that these advances are "credit" and that EarnIn's expedite fees and tips are "finance charges" under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601. *See infra* Section E.

### B. The Operative Terms

To use EarnIn's cash advance services, customers must agree to its General Terms of Service, including its arbitration agreement. EarnIn's General Terms of Service, effective January 17, 2025 (the "Operative Terms"), contain "No Class Actions" and "Arbitration Rules and Process" provisions, which provide:

> You (i) will not bring a claim against Earnin or Earnin's service providers as part of a class, consolidated group, or collective, and (ii) are not entitled to consolidate or join claims by other individuals or entities, or arbitrate or litigate any claim in a representative capacity . . . .

> The ***American Arbitration Association ("AAA") will conduct arbitration proceedings*** under the Commercial Arbitration Rules and the Supplementary Procedures for Consumer Related Disputes . . . in effect at the time of the arbitration . . . .

Hoffman Decl. ¶ 3, Ex. B (Operative Terms) § 11 (emphasis added). The Operative Terms define "Claim" to include the "validity or enforceability of any part of this Arbitration Provision or this Agreement," and make "final and binding individual arbitration" the "sole and exclusive process" for resolving an unresolved Claim. *Id.* They are governed by Delaware law. *Id.*

### C. EarnIn Changed the Designated Arbitration Provider.

On September 15, 2025, EarnIn issued amended terms selecting National Arbitration and Mediation ("NAM") as the arbitration provider, and it issued further revisions on March 11, 2026 and May 7, 2026 (collectively, the "Amended Terms"). Compl. ¶¶ 1, 41 & n.1; Hoffman Decl. ¶¶ 4–6, Exs. C, D, E (Amended Terms) § 12(e). EarnIn alleges that the later versions made no changes to the arbitration provision. Compl. ¶ 41 n.1. The Amended Terms also state:

> The arbitrator will have exclusive authority to resolve any Dispute, including, without limitation, Disputes regarding the interpretation, application, enforceability, revocability, scope, or validity of any portion of this Dispute Resolution Agreement . . . .

Hoffman Decl. ¶ 4, Ex. C. On March 12, 2026, Defendants' counsel notified EarnIn that Defendants elected to opt out of all versions of EarnIn's terms published after January 17, 2025, including the Amended Terms. *Id.* ¶ 7, Ex. F (Opt-Out); Compl. ¶ 71.

### D. Defendants File Demands Before the AAA.

Pursuant to the Operative Terms, on June 17, 2026, Defendants filed individual demands against EarnIn before the AAA. Hoffman Decl. ¶ 2, Ex. A; Compl. ¶ 74. The demands assert claims under TILA, the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. §§ 1693-1693r, and state lending and consumer protection laws. Hoffman Decl. ¶ 2, Ex. A, Counts I–VI. Defendants allege that EarnIn markets its advances as interest-free while charging expedite fees and soliciting tips

that are undisclosed finance charges. *Id.* ¶¶ 10–11, 19–22, 27–30, 45–51. They further allege that EarnIn conditions advances on automatic repayment, charges interest above state limits, lends without required licenses, and misrepresents its products. *Id.* ¶¶ 31–44, 52–55.

### E. Prior Litigation Confirms Defendants' Arbitration Demands Are Supported by Applicable Law.

Federal courts have repeatedly rejected the defenses EarnIn raises to these claims. In *Orubo v. Activehours, Inc.*, the court denied EarnIn's motion to dismiss materially similar TILA claims, holding that EarnIn's advances "squarely fall[] within the definition of credit" and that its tips and expedite fees are finance charges even though nominally optional. 780 F. Supp. 3d 927, 935–38 (N.D. Cal. 2025). Courts have since rejected the same arguments from EarnIn. *See, e.g.*, *Ramirez v. Activehours, Inc.*, 828 F. Supp. 3d 1040, 1046–52 (N.D. Cal. 2026); *Johnson v. Activehours, Inc.*, No. 1:24-cv-02283-JRR, 2025 WL 2299425, at *8–9 (D. Md. Aug. 8, 2025). As another court observed, "[e]very federal district court to have confronted arguments similar to those [the defendant] makes here has rejected them." *Moss v. Klover Holdings, Inc.*, No. 25-cv-5758, 2026 WL 622653, at *7 (N.D. Ill. Mar. 5, 2026).[1] The Colorado Attorney General has also sued EarnIn,

[1] *See also Lowe v. MoneyLion Techs. Inc.*, 822 F. Supp. 3d 374, 379–80 (S.D.N.Y. 2026) (agreeing "with every court to have reached the issue" that similar advances are credit), *appeal docketed,* No. 26-655 (2d Cir. Mar. 18, 2026); *Russell v. Dave Inc.*, 812 F. Supp. 3d 998, 1010–11 (C.D. Cal. 2025) (express fees and tips are finance charges), *appeal docketed*, No. 26-12 (9th Cir. Jan. 2, 2026); *Golubiewski v. Activehours, Inc.*, No. 3:22-cv-02078, 2025 WL 2484192, at *5–6 (M.D. Pa. Aug. 28, 2025) (denying EarnIn's motion to dismiss TILA and Pennsylvania usury claims). A December 2025 CFPB advisory opinion concluding that products meeting its "Covered EWA" criteria are not credit does not bind this Court, and courts continue to hold that direct-to-consumer advances are plausibly credit. *See* Truth in Lending (Regulation Z); Non-application to Earned Wage Access Products, 90 Fed. Reg. 60069, 60071, 60076 (Dec. 23, 2025) (advisory opinion "does not have the force or effect of law" and does not state that non-covered products are not credit); *Ramirez*, 828 F. Supp. 3d at 1047 (advisory opinion "does not apply to EarnIn" because it covers only providers that do not assess individual credit risk, and plaintiffs alleged EarnIn does); *Klover*, 2026 WL 622653, at *6 (same, for product with alleged third-party underwriting; staff commentary on payday advances "remains the guidance to which this court is to defer") (citing

alleging that it lends money to consumers, is repaid from their paychecks, and charges high fees. Hoffman Decl. ¶ 9, Ex. H at 2.

### F. The AAA Proceedings and EarnIn's Request to Halt Them

Defendants' counsel filed 9,526 individual demands against EarnIn on behalf of claimants ("Claimants"), including the five Defendants: 5,211 on June 17, 2026, and 4,315 on August 3, 2026. Compl. ¶¶ 3, 20, 74, 76. In an August 27, 2026 letter to the AAA (the "August Letter"), EarnIn stated that it had timely paid its portion of the initiation fee, while reserving its position that the AAA lacks jurisdiction over Claimants it contends are bound by the Amended Terms. Hoffman Decl. ¶ 8, Ex. G at 2.

The August Letter asked the AAA to stay all 9,526 demands, and any later-filed demands, based on this action against five Defendants. *Id.* at 1-2. On September 4, 2026, Claimants opposed, explaining that this action provided no basis to stay thousands of nonparties' arbitrations, and asked the AAA to appoint a Process Arbitrator to address EarnIn's stay request and other threshold issues. *Id.* ¶ 9, Ex. H at 1–2, 4–5.

On October 16, 2026, the AAA confirmed that it "will continue administration of the Mass Arbitration caseload," except that the five Defendants' claims are stayed. Hoffman Decl. ¶ 12, Ex. K. The AAA stated that EarnIn could raise any broader stay request with a Process Arbitrator, confirmed receipt of both sides' initiation fees, and said it would schedule an administrative call. *Id.*

---

*Burrison v. FloatMe, Corp.*, No. 25-cv-10885-DJC, 2026 WL 444638, at *6 n.5 (D. Mass. Feb. 17, 2026), *appeal docketed*, No. 26-1256 (1st Cir. Mar. 17, 2026)).

## LEGAL STANDARD

Dismissal under Rule 12(b)(1) is warranted when the court lacks the "statutory or constitutional power to adjudicate" the action. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* On a facial challenge, the court accepts the complaint's material factual allegations as true and draws reasonable inferences in the plaintiff's favor but determines whether those allegations establish jurisdiction. *Carter v. HealthPort Techns., LLC*, 822 F.3d 47, 56–57 (2d Cir. 2016). District courts have original jurisdiction over civil actions "arising under" federal law, 28 U.S.C. § 1331, and over actions between citizens of different States where the amount in controversy exceeds $75,000, *id.* § 1332(a). *See Badgerow v. Walters*, 596 U.S. 1, 9 (2022).

## ARGUMENT

### I. THE COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(B)(1) FOR LACK OF SUBJECT-MATTER JURISDICTION.

This is a contract dispute. EarnIn asks the Court to decide which version of its Terms binds Defendants. Compl. ¶¶ 22, 78-85. It does not ask the Court to decide whether its advances violate TILA or EFTA, and it does not ask the Court to compel or enjoin any arbitration. Its sole cause of action invokes the Declaratory Judgment Act, which confers no jurisdiction. *Id.* ¶¶ 30, 85. And it alleges neither the parties' citizenship nor any amount in controversy. Compl. ¶¶ 23-33. The Complaint should be dismissed.

#### A. The Complaint Presents a State-Law Contract Dispute, Not a Federal Cause of Action.

On this facial challenge, the Court accepts the Complaint's material allegations as true but asks whether they establish jurisdiction. *Carter*, 822 F.3d at 57. The Court need not resolve notice, continued use, or the effectiveness of Defendants' opt-outs. Even on EarnIn's account, the question

is whether federal law authorizes the Court to decide whether Defendants assented to the Amended Terms under state contract law.

EarnIn invokes only 28 U.S.C. §§ 1331 and 2201, asserting that "the underlying controversy involves claims arising under the laws of the United States." Compl. ¶ 30. Its own allegations show otherwise. EarnIn alleges that it switched providers from the AAA to NAM on September 15, 2025, that Defendants accepted the new terms through later transactions, and that their March 12, 2026 opt-out was ineffective.[2] *Id.* ¶¶ 1, 41-65. Its single count alleges notice, assent, and breach by filing in the wrong forum. *Id.* ¶¶ 79-85. It seeks declarations that the Amended Terms are valid, govern the parties' relationship, and require individual arbitration before NAM. *Id.*, Prayer for Relief (a)-(c). It seeks no determination of Defendants' TILA or EFTA claims.

Federal-question jurisdiction ordinarily exists when federal law creates the cause of action. *Gunn v. Minton*, 568 U.S. 251, 257 (2013); *AMTAX Holdings 227, LLC v. CohnReznick LLP*, 136 F.4th 32, 37–38 (2d Cir. 2025). EarnIn pleads none. Its claim turns only on state-law issues: whether notice of the change was effective, whether Defendants' opt-out was valid, and whether Defendants assented to the Amended Terms. *See Specht v. Netscape Commc'ns*, 306 F.3d 17, 26 (2d Cir. 2002) ("The determination of whether parties have contractually bound themselves to arbitrate a dispute [is] a determination involving interpretation of state law"); *Schnabel v.*

[2] To be clear, in the appropriate forum, Defendants will show that their claims accrued before September 15, 2025 and that EarnIn's attempt to change terms retroactively to those claims is unenforceable and violates the implied covenant of good faith and fair dealing. *See* Hoffman Decl. ¶ 7, Ex. F (Opt-Out); *cf. Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 682–83 (9th Cir. 2024) (holding procedurally unconscionable under California law terms of use that applied new mass-arbitration procedures to claims "irrespective of when" they arose), *cert. denied*, 146 S. Ct. 96 (2025). These are straightforward state-law contract issues. *See Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 119 (2d Cir. 2012); *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 26 (2d Cir. 2002).

*Trilegiant Corp.*, 697 F.3d 110, 119 (2d Circ. 2012) ("Whether or not the parties have agreed to arbitrate is a question of state contract law."). None requires deciding whether EarnIn extended credit, imposed a finance charge, or violated TILA or EFTA. The dispute would be the same if Defendants had brought no demands at all.

**B. Section 2201(a) Supplies a Remedy, Not Jurisdiction.**

EarnIn also cites the Declaratory Judgment Act, 28 U.S.C. § 2201. Compl. ¶ 30. But "the Declaratory Judgment Act does not by itself confer subject matter jurisdiction on the federal courts . . . Rather, there must be an independent basis of jurisdiction before a district court may issue a declaratory judgment." *Correspondent Servs. Corp. v. First Equities Corp. of Fla.*, 442 F.3d 767, 769 (2d Cir. 2006).

*Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667 (1950), is instructive. There, the plaintiff sought a declaration whether "contracts were still in effect and binding upon the parties." *Id*. at 671. The Court held that the Act "is procedural only" and that "Congress enlarged the range of remedies available in the federal courts but ***did not extend their jurisdiction***." *Id.* at 671 (emphasis added). Because the federal question would have arisen only as a defense to a contract claim, there was no federal-question jurisdiction. *Id.* at 672-74. The same is true of EarnIn's request for a declaration about which Terms apply.

Nor does the realignment rule help EarnIn. In a declaratory judgment action, courts "conceptually realign the declaratory judgment parties and claims and analyze them as they would appear in a coercive suit." *Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc.*, 697 F.3d 59, 67 (2d Cir. 2012). The question is whether the declaratory defendant "could have sued in federal court, seeking non-declaratory relief on the same claims pressed in the declaratory suit." *Leopard Marine & Trading, Ltd. v. Easy St. Ltd.*, 896 F.3d 174, 182 (2d Cir. 2018). The claims EarnIn presses concern contractual notice, assent, opt-out, and forum selection generally. Compl.

¶¶ 80–85. A coercive suit on those claims would be a suit to enforce the January 2025 arbitration agreement. That is a contract claim. Disputes over the contractual rights created by an arbitration agreement are "generally governed by state law." *Badgerow*, 596 U.S. at 18; *see id.* at 9 (quarrels over settlement agreements disposing of federal claims "typically involve only state law, like disagreements about other contracts").[3]

### C. The FAA Supplies No Jurisdiction Over a Declaratory Action About Arbitration.

The FAA likewise confers no jurisdiction. *Vaden v. Discover Bank*, 556 U.S. 49, 59 (2009) (FAA "bestow[s] no federal jurisdiction but rather requir[es] . . . an independent jurisdictional basis over the parties' dispute" (citation omitted)); *Perpetual Sec., Inc. v. Tang*, 290 F.3d 132, 136 (2d Cir. 2002) (same). A federal court may entertain an FAA action "only if the action has an 'independent jurisdictional basis.'" *Badgerow*, 596 U.S. at 8 (citation omitted). Section 4 lets a court "look through" a petition to compel to the parties' underlying controversy. *Vaden*, 556 U.S. at 62. EarnIn has filed no such petition. And *Badgerow* declined to extend look-through beyond Section 4. 596 U.S. at 5, 9–12. Look-through is "a highly unusual" rule that "locates jurisdiction not in the action actually before the court, but in another controversy neither there nor ever meant

[3] Defendants recognize that the Second Circuit has looked to an underlying arbitration demand to identify the coercive claim where the declaratory plaintiff sought "a ruling establishing plaintiff's nonliability on the defendant's claim." *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1018 (2d Cir. 2014). Defendants' demands assert claims under TILA and EFTA, as well as state lending and consumer protection claims. Hoffman Decl. ¶ 2, Ex. A, Counts I–II. But EarnIn does not seek a declaration that it is not liable on any of those claims. It seeks only declarations about which Terms govern and where Defendants must arbitrate. Compl. ¶ 85, Prayer for Relief (a)–(c). In *NASDAQ*, by contrast, the declaratory plaintiff sought to bar the arbitration because, in its view, an exchange rule foreclosed liability on the very claims being arbitrated. 770 F.3d at 1033–34. And in *Garanti*, the arbitrability dispute and the coercive claim arose from the same maritime contract, which itself supplied admiralty jurisdiction. 697 F.3d at 65–66, 71. Here, the federal statutes underlying Defendants' merits claims play no role in deciding which Terms govern.

to be," and it rests entirely on Section 4's "save for" text. *Id.* at 10–12. Absent a jurisdictional basis, "the action belongs in state court," because "[t]he FAA requires those courts, too, to honor arbitration agreements." *Id.* at 8. The Supreme Court recently reaffirmed that look-through is a "jurisdictional outlier." *Jules v. Andre Balazs Props.*, 608 U.S. 200, 206 (2026) (quoting *Badgerow*, 596 U.S. at 14). Courts applying *Badgerow* have refused to find jurisdiction based on federal claims asserted in the underlying arbitration, even where those claims were first filed in federal court. *Ascension Data & Analytics, L.L.C. v. Pairprep, Inc.*, 105 F.4th 749, 753–54 (5th Cir.), *cert. denied*, 145 S. Ct. 595 (2024); *see also Ascension Data & Analytics, LLC v. Pairprep, Inc.*, No. 3:23-CV-00552-N, 2023 WL 5945859, at *2–3 (N.D. Tex. Sept. 11, 2023) (same, for request for declaratory judgment), *aff'd*, 105 F.4th 749 (5th Cir.) (declaratory-judgment request abandoned on appeal), *cert denied*, 145 S. Ct. 595 (2024).

EarnIn does not petition to compel under Section 4. Compl. ¶¶ 79–85. It seeks only declarations under § 2201 that the Amended Terms govern and require arbitration before NAM. *Id.*, Prayer for Relief (a)–(c). Section 4's look-through cannot be imported into a declaratory action simply because the declarations concern arbitration. *Badgerow*, 596 U.S. at 8–12.[4]

[4] Section 4 is available only to a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate." 9 U.S.C. § 4; *see Badgerow,* 596 U.S. at 10 n.3 (citing 9 U.S.C. § 4). Defendants filed their demands with the AAA, which has accepted administration, and both sides have paid initiation fees. Hoffman Decl. ¶ 8, Ex. G at 2; *id.* ¶ 12, Ex. K. Nor does EarnIn seek to enjoin the arbitrations. *Goldman, Sachs & Co. v. Golden Empire Schs. Fin. Auth.*, 764 F.3d 210 (2d Cir. 2014), is not to the contrary. There, the plaintiff sought declaratory and injunctive relief against arbitration. *Id.* at 12. The court extended *Vaden*'s look-through to that action by analogy and also found diversity jurisdiction. *Id.* at 213. *Badgerow* has since refused to extend look-through beyond Section 4's text. *See* 596 U.S. at 11–12. And EarnIn does not invoke diversity. *See* Section I.E., *infra*.

### D. Defendants' TILA and EFTA Arbitration Claims Do Not Create Jurisdiction Over EarnIn's Contract Claim.

EarnIn points to the TILA claims in Defendants' demands, which also assert EFTA claims. Compl. ¶¶ 15, 67; Hoffman Decl. ¶ 2, Ex. A, Counts I–II. But a reference to federal law does not confer jurisdiction over relief that sounds entirely in state contract law.

The Second Circuit has repeatedly affirmed dismissal where federal law is tangential to the dispute. In *AMTAX*, the plaintiff argued that its state-law claims required interpreting the Internal Revenue Code to calculate a contractual purchase price. 136 F.4th at 38–39. The court affirmed dismissal because the dispute rested "on the interpretation of the Agreement's purchase-price provision, not on federal tax law." *Id.* at 39-40; *see also T.B. Harms Co. v. Eliscu*, 339 F.2d 823, 825-28 (2d Cir. 1964) (copyright ownership dispute turned on contract principles); *Canada Life Assurance Co. v. Converium Rückversicherung (Deutschland) AG*, 335 F.3d 52, 57–59 (2d Cir. 2003) (no jurisdiction over contract dispute despite connection to September 11 and federal statute conferring jurisdiction over September 11 litigation); *Fracasse v. People's United Bank*, 747 F.3d 141, 144 (2d Cir. 2014) ("references to the [Fair Labor Standards Act, 29 U.S.C. § 201] . . . do not provide a basis for federal subject matter jurisdiction").

A state-law claim supports federal jurisdiction only if the federal issue is (1) necessarily raised; (2) actually disputed; (3) substantial; and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress. *Gunn*, 568 U.S. at 258. All four are required. *AMTAX*, 136 F.4th at 38 & n.6. EarnIn meets none.

First, no federal issue is necessarily raised. Whether Defendants assented to the Amended Terms, and whether those terms govern previously asserted disputes, can be decided without reaching the TILA and EFTA claims. *See* Compl. ¶¶ 80–85; *New York v. Shinnecock Indian Nation*, 686 F.3d 133, 140–41 (2d Cir. 2012) (no necessarily raised federal issue where state-law

claims could be resolved without reaching federal questions); *T.B. Harms Co.*, 339 F.2d at 825–28 (affirming dismissal where the dispute concerned an alleged copyright assignment and contractual rights rather than interpretation of federal copyright law).

Second, no federal issue is actually disputed. Which terms govern, and which provider administers the arbitrations, are questions of state law. Compl. ¶¶ 84–85; *Schnabel*, 697 F.3d at 119. A disputed federal question in another forum does not create one here. *See Fracasse*, 747 F.3d at 142–45 (no jurisdiction despite references to the FLSA and a separate federal FLSA action arising from the same conduct).

Third, the issue is not substantial. Substantiality "looks . . . to the importance of the issue to the federal system as a whole," not to the parties. *Id.* at 144 (internal quotation marks omitted). A ruling on whether Defendants accepted EarnIn's revised terms would resolve only their forum obligations. It would not establish the meaning of TILA, EFTA, the FAA, or the Declaratory Judgment Act. *See AMTAX*, 136 F.4th at 39–40 (finding insufficient substantiality where the dispute ultimately depended on interpreting the parties' agreement, despite its connection to federal tax law).

Fourth, exercising jurisdiction would disrupt the federal-state balance. Contract formation and modification are traditionally matters of state law for state courts. *See Schnabel*, 697 F.3d at 119. Exercising jurisdiction here would draw ordinary contract disputes into federal court whenever the contract permits arbitration of federal claims. *See AMTAX*, 136 F.4th at 40–41. State courts can decide these questions, and the FAA "requires those courts, too, to honor arbitration agreements." *Badgerow*, 596 U.S. at 8. Disputes over "the contractual rights provided in the arbitration agreement, generally governed by state law," belong there even when the underlying claims arise under federal law. *Id.* at 18; *see also Jennings v. Vandergriff Honda*, No. 25-11034,

2026 WL 2594312, at *2 (5th Cir. Sept. 2, 2026) (no jurisdiction over petition to vacate consumer AAA award on federal claims because petition concerned only contractual rights under the arbitration agreement).

Accordingly, EarnIn's contractual claim does not fall within the narrow category of state-law claims that support federal jurisdiction.

**E. EarnIn Has Not Pleaded Diversity Jurisdiction.**

EarnIn invokes only Sections 1331 and 2201, Compl. ¶ 30, and it does not plead the facts diversity requires. A corporation is a citizen of its State of incorporation and of its principal place of business. 28 U.S.C. § 1332(c)(1); *Bayerische Landesbank, N.Y. Branch v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 51 (2d Cir. 2012). EarnIn alleges only that it is "domiciled in Mountain View, California." Compl. ¶ 23. It never alleges where it is incorporated. An individual is a citizen of her domicile. *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000). EarnIn alleges only where each Defendant "resides," Compl. ¶¶ 24–28, and "allegations of residency alone cannot establish citizenship." *Canedy v. Liberty Mut. Ins. Co.*, 126 F.3d 100, 103 (2d Cir. 1997). Its venue allegation that Defendants are "domiciled in New York," Compl. ¶ 33, does not cure the omission of EarnIn's own citizenship. Nor does the Complaint allege any amount in controversy. *See id.* ¶¶ 30–33.

EarnIn bears the burden. *Makarova*, 201 F.3d at 113. Defective jurisdictional allegations may be cured by amendment, 28 U.S.C. § 1653; *Canedy*, 126 F.3d at 103, but EarnIn has not sought leave, and the Court should not supply a basis EarnIn chose not to plead. If EarnIn later invokes diversity, it must establish an amount in controversy, which "is measured by the value of the object of the litigation." *Garanti*, 697 F.3d at 68 (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977)). EarnIn alleges nothing about that value for any Defendant.

## II. IF JURISDICTION EXISTS, THE COURT SHOULD DECLINE DISCRETIONARY DECLARATORY RELIEF UNDER SECTION 2201(A) OR STAY THIS ACTION.

Even if jurisdiction exists, the Court "may declare" the parties' rights but need not do so. 28 U.S.C. § 2201(a). The Act "confers a discretion on the courts rather than an absolute right upon the litigant," and "the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287–88 (1995) (citation omitted); *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359–60 (2d Cir. 2003). Courts consider (1) whether a declaration would usefully clarify or settle the legal issues; (2) whether it would finalize the controversy and relieve uncertainty; (3) whether the action is procedural fencing or a race to a preclusive judgment; (4) whether it would create friction between sovereign legal systems or encroach on state or foreign courts; (5) whether a better or more effective remedy exists; and (6) whether judicial efficiency and economy favor declining relief. *Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 99–100 (2d Cir. 2023). No one factor is dispositive. *Id.* at 100.

Those factors favor dismissal. The AAA proceeding already provides a mechanism for resolving threshold disputes over the applicable terms. This action would duplicate it and risk inconsistent rulings. A declaration as to five Defendants would not resolve the rights of the thousands of absent Claimants whose arbitrations EarnIn seeks to halt. And EarnIn filed this action on August 24, 2026, more than two months after Defendants filed their demands, then used it to ask the AAA to stay all 9,526 demands. Compl. at 19; Hoffman Decl. ¶ 8, Ex. G at 1–2. That sequence bears the hallmarks of procedural fencing. At a minimum, the Court should stay this action pending the AAA proceedings. *See Wilton*, 515 U.S. at 288 & n.2.

Courts in this District have declined declaratory jurisdiction on similar grounds. *See In re IBM Arb. Agreement Litig.*, No. 21-CV-6296 (JMF), 2022 WL 2752618, at *4–5 & n.9 (S.D.N.Y.

July 14, 2022) (declaration would serve no useful purpose, and suit was a transparent attempt to avoid the FAA's vacatur limits), *aff'd*, 76 F.4th 74, 83 n.5, 86 (2d Cir. 2023).

### A. The Pending AAA Proceeding Is the Better Forum for EarnIn's Procedural Objections.

EarnIn paid its initiation fee, and the AAA will continue administering the mass arbitration. Hoffman Decl. ¶ 8, Ex. G at 2; *id.* ¶ 12, Ex. K. Claimants have asked the AAA to appoint a Process Arbitrator to address EarnIn's stay request and its forum, conditions-precedent, and filing objections. *Id.* ¶ 9, Ex. H at 4–5. EarnIn itself invoked that process. Its August Letter asked the AAA to stay the demands under the Mass Arbitration Supplementary Rules. *Id.* ¶ 8, Ex. G at 1. Months earlier, EarnIn told Claimants' counsel that it "will utilize AAA's Mass Arbitration Supplementary Rules and Consumer Rules to ensure that any Claimants who are . . . subject to the current Terms of Service where NAM is the required arbitral forum . . . do not move forward in AAA." *Id.* ¶ 8, Ex. G, Ex. A thereto at 4. By EarnIn's own account, the arbitral proceeding can resolve its threshold objections.

The Second Circuit has upheld declining declaratory relief where another proceeding is the better vehicle. In *National Union Fire Insurance Co. of Pittsburgh, Pa. v. Karp*, 108 F.3d 17, 22–23 (2d Cir. 1997), the court affirmed a decision declining to adjudicate a declaratory claim because the issue could be resolved in a concurrent state-court action. The inquiry focused on the scope of the existing proceeding, the defenses available there, and its ability to resolve the controversy. *Id.* The same considerations apply where the forum the parties chose by contract is already administering the dispute.

Here, the AAA may appoint a Process Arbitrator after the parties pay initiation fees and a party gives written notice of a disputed issue. Hoffman Decl. ¶ 10, Ex. I, Rule MA-6(a). Both sides have paid, and Claimants have given notice. *Id.* ¶¶ 8–9, 12, Exs. G, H, K. The Process Arbitrator

may decide contractual filing requirements, conditions precedent, which demands belong in the mass filing, and other non-merits issues affecting case administration. *Id.* ¶ 10, Ex. I, Rule MA-6(c). It may also rule on its own jurisdiction. *Id.* Rule MA-6(d).

Two of those provisions map directly onto EarnIn's objections. EarnIn contends that Claimants failed to complete informal dispute resolution. Compl. ¶ 45 & n.3; Hoffman Decl. ¶ 8, Ex. G at 2. That is a dispute over "applicable conditions precedent." *Id.* ¶ 10, Ex. I, Rule MA-6(c)(ii). And EarnIn's request to halt the mass arbitration is a "non-merits issue[] affecting case administration," as the AAA recognized. *Id.* Ex. I, Rule MA-6(c)(xi); *id.* ¶ 12, Ex. K. EarnIn should present these objections where the demands are pending.

*Frazier* reinforces the point. Once parties are before their chosen arbitral body, courts do not use Section 4 to police internal procedural disputes, including fee and rule-compliance questions. *Frazier*, 155 F.4th at 96–97, 99–100. EarnIn's informal-dispute resolution and stay objections are procedural matters of that kind.

EarnIn sued five Defendants but acknowledges 9,521 other Claimants. Compl. ¶ 3. Its requested declarations concern "each Defendant." *Id.* ¶¶ 22, 80–85. Yet the August Letter sought to stay *all* 9,526 demands, relief the Complaint does not request. Hoffman Decl. ¶ 8, Ex. G at 1–2. A declaration as to five Defendants would not adjudicate absent Claimants' rights, and EarnIn itself alleges that their circumstances differ. *See* Compl. ¶¶ 18, 20. The AAA has continued administering the nonparties' arbitrations despite EarnIn's request. Hoffman Decl. ¶ 12, Ex. K. This Court would thus decide threshold questions for five Defendants while the AAA addresses the same questions for everyone else, fragmenting the proceedings and risking inconsistent rulings. *See Admiral*, 57 F.4th at 99–100 (identifying the availability of a better remedy and judicial efficiency and economy as considerations supporting discretionary dismissal); *Dow Jones*, 346

F.3d at 359–60 (affirming discretionary dismissal after considering the declaration's usefulness, whether it would finalize the controversy, and the availability of a better or more effective remedy).

The AAA's stay of the five Defendants' cases does not change the analysis. The AAA stayed them only because EarnIn filed this action. Hoffman Decl. ¶ 12, Ex. K. Its rules contemplate a temporary suspension so a party may "obtain a stay of arbitration from the court." *Id.* ¶ 10, Ex. I, Rule MA-1(e). EarnIn has sought no such stay. If the Court declines this action, the basis for the administrative stay falls away.

Accordingly, the existing arbitral procedures, the duplication and delay associated with parallel litigation, and the limited reach of relief against five individuals weigh in favor of declining declaratory relief under § 2201(a).

### B. The Delegation Provisions Confirm That Threshold Objections Belong in Arbitration.

EarnIn's own delegation provisions confirm that arbitration is the proper forum. The Operative Terms define "Claim" to include disputes about the validity or enforceability of the agreement and its arbitration provision, and they incorporate the AAA Rules. Hoffman Decl. ¶ 3, Ex. B § 11. Defendants contend that EarnIn cannot use a retroactive, unilateral amendment with unconscionable opt-out restrictions to displace their existing forum rights. *Id.* ¶ 7, Ex. F at 1–2. The Operative Terms send that enforceability dispute to arbitration. The Amended Terms are more explicit still. They give the arbitrator exclusive authority over the agreement's interpretation, application, enforceability, revocability, scope, and validity, except as to the class and non-individual-relief waiver. *Id.* ¶¶ 4–6, Exs. C, D & E § 12(g); *see* Compl. ¶ 42.

Defendants recognize that where parties "have agreed to two contracts—one sending arbitrability disputes to arbitration, and the other either explicitly or implicitly sending arbitrability disputes to the courts—a court must decide which contract governs." *Coinbase, Inc. v. Suski*, 602

U.S. 143, 152 (2024); *see* Compl. ¶ 77. Here, both versions delegate arbitrability to an arbitrator; they differ only as to provider. In any event, *Suski* allocates authority between courts and arbitrators. It does not supply jurisdiction or require a court to exercise its discretion under § 2201(a). Nor does it reach EarnIn's objections that do not depend on which contract governs, such as informal dispute resolution and which demands belong in the mass arbitration. Compl. ¶ 45 & n.3; Hoffman Decl. ¶ 8, Ex. G at 2. Those questions belong in the arbitral process EarnIn designed. *See Admiral*, 57 F.4th at 99–100.

## III. ALTERNATIVELY, THE COURT SHOULD STRIKE IMMATERIAL AND PREJUDICIAL ALLEGATIONS UNDER RULE 12(F).

If the Court retains the case, it should strike the allegations identified below under Rule 12(f). EarnIn seeks only declarations about which contract governs five individuals. Yet much of its pleading attacks counsel's motives, recruitment practices, and the supposed deficiencies of thousands of nonparties' claims. Those accusations have nothing to do with which agreement governs. They turn a five-person contract dispute into a referendum on mass arbitration and Defendants' counsel.

Labaton Keller Sucharow LLP and Berger Montague P.C. are experienced plaintiffs' firms whose qualifications have been recognized by courts in this District. *See Radtke v. Regeneron Pharms., Inc.,* 2025 WL 1906677, at *2 (S.D.N.Y. July 10, 2025) (recognized Labaton's prior success in securities litigation and successful service as lead counsel in other cases in this District); *In re Bystolic Antitrust Litig.*, 2020 WL 6700830, at *2 (S.D.N.Y. Nov. 12, 2020) ("the Court is satisfied with the quality of the pleadings of . . . Berger and the 'vigorousness' of their representation of their client."). Labaton's record includes the $650 million settlement in *In re Facebook Biometric Information Privacy Litigation* and its role as trial counsel in *Frasco v. Flo Health, Inc.*, where a jury found Meta liable under the California Invasion of Privacy Act for

obtaining users' sensitive reproductive-health information. *See* 522 F. Supp. 3d 617 (N.D. Cal. 2021), *aff'd,* No. 21-15553, 2022 WL 822923 (9th Cir. Mar. 17, 2022); Am. Order Re Post-Trial Mots., at 1-2, No. 21-cv-00757-JD (N.D. Cal. Sept. 17, 2025), Dkt. No. 776 (denying Meta's post-trial challenges to the verdict); *see also* Hoffman Decl. ¶ 14, Ex. L.

Courts have likewise rejected the premise that coordinated individual arbitrations are inherently improper when consumers or workers invoke the procedures companies themselves prescribed. *See, e.g.*, *Postmates Inc. v. 10,356 Individuals*, 2020 WL 1908302, at *7 (C.D. Cal. Apr. 15, 2020); *Abernathy v. DoorDash, Inc.*, 438 F. Supp. 3d 1062, 1067–68 (N.D. Cal. 2020); *In re Google Assistant Privacy Litig.*, No. 5:19-cv-04286-BLF, 2025 WL 510435, at *3 (N.D. Cal. Feb. 14, 2025) (rejecting challenge to adequacy of communication and authorization between arbitral claimants and their counsel brought by defendant because any such alleged harm, if proved, "would have a malpractice remedy").

Having required its users to pursue individual arbitration, EarnIn cannot establish misconduct merely by pointing to the number of users who invoked that process. Its unsubstantiated attacks on counsel and unrelated claimants do not establish which Terms govern these five Defendants or which provider should administer their claims. The immaterial and prejudicial allegations identified below should therefore be stricken.

### A. Rule 12(f) Authorizes Targeted Removal of Immaterial and Prejudicial Allegations.

Rule 12(f) permits the Court to strike "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The movant must show that "(1) no evidence in support of the allegations would be admissible; (2) the allegations have no bearing on the relevant issues; and (3) permitting the allegations to stand would result in prejudice to the movant." *Lynch v. Southampton Animal Shelter Found., Inc.*, 278 F.R.D. 55, 63 (E.D.N.Y. 2011) (quoting *Roe v. City*

*of New York*, 151 F. Supp. 2d 495, 510 (S.D.N.Y. 2001)). Such motions are disfavored, but courts strike allegations where there is a "strong reason for so doing." *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976). That presumption does not apply where the matter is also scandalous. *Brown v. Maxwell*, 929 F.3d 41, 51 n.42 (2d Cir. 2019). And stricken matter "would enjoy no presumption of public access." *Id.* at 52. Defendants do not ask the Court to decide whose account is accurate. They ask it to strike allegations that inject collateral controversies.

Matter is immaterial when it lacks an essential or important relationship to the claim, and impertinent when it is not necessary to resolve the disputed issues. *Amaya v. Ballyshear LLC*, 340 F. Supp. 3d 215, 224 (E.D.N.Y. 2018). In *Amaya*, the court struck allegations relating to claims no longer before it. *Id.* Allegations must be essential to the controversy actually pleaded.

### B. Allegations About Counsel and Nonparty Claimants Are Immaterial to the Five Defendants' Contractual Obligations.

EarnIn frames the adjudication in individual terms. It seeks declarations that the Amended Terms bind "each Defendant." Compl. ¶¶ 22, 80–85. That question turns on black-letter contract issues of notice, assent, modification, opt-out, and enforceability. *Id.* ¶ 78. Whether unidentified others have viable claims, understood counsel's recruitment materials, or are deceased does not.

EarnIn alleges that all five Defendants are Cash Out users and describes their transactions. *Id.* ¶¶ 56–65. Whether other individuals could be verified as customers, or had viable claims, says nothing about whether these Defendants accepted the Amended Terms.

EarnIn's own terms require individual proceedings and bar class actions. *See* Hoffman Decl. ¶ 3, Ex. B § 11; *id.* ¶¶ 4–6, Exs. C, D & E § 12(d). Pursuing many individual demands through common counsel is not misconduct, and it does not make unrelated Claimants' circumstances material here.

Any declaration will run only to the five Defendants. The Supreme Court has confined nonparty preclusion to limited exceptions and rejected "virtual representation." *Taylor v. Sturgell*, 553 U.S. 880, 893–95, 904 (2008).

### C. The Challenged Passages Invite Collateral Disputes Rather Than Resolve Contractual Assent.

After *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011), companies like EarnIn increasingly required individual arbitration. Consumers have since "had some success in bringing large numbers of parallel individual small-stakes consumer claims in arbitration." *Heckman*, 120 F.4th at 677. Some States now require drafting companies to pay arbitration fees when due. *See, e.g.*, Cal. Civ. Proc. Code §§ 1281.97–1281.98.

Some companies have responded by changing their terms to impose new procedures on claims that have already arisen. *See Heckman*, 120 F.4th at 682-83 (affirming refusal to compel where company amended its terms, while a motion to compel was pending, to impose mass-arbitration procedures on disputes "irrespective of when" they arose). EarnIn changed its Terms on September 15, 2025, five weeks after Claimants' counsel sent a demand letter on behalf of 12,241 individuals. Compl. ¶¶ 41, 67. Claimants contend that EarnIn then sent the Amended Terms directly to represented customers. Hoffman Decl. ¶ 9, Ex. H at 3.

EarnIn's Complaint then levels accusations at Defendants' counsel and at thousands of unidentified nonparties who share nothing with Defendants but their choice of counsel. Several allegations concern the data exchange and outcome of a failed mediation under the parties' tolling agreement. Compl. ¶¶ 17–21, 68–69. The parties agreed that data exchanged for that mediation would remain confidential and be used for no other purpose. Hoffman Decl. ¶ 11, Ex. J (Tolling Agreement) ¶ 10(c). The Second Circuit has held that the FAA's policy favoring confidential arbitration, and the impropriety of evading confidentiality obligations, can outweigh the

presumption of public access. *Stafford v. Int'l Bus. Machs. Corp.*, 78 F.4th 62, 70–71 (2d Cir. 2023); *In re IBM Arb. Agreement Litig.*, 76 F.4th 74, 86 (2d Cir. 2023). Other allegations are generic complaints about mass arbitration. Compl. ¶¶ 4, 7. Yet EarnIn's own Amended Terms provide procedures for batching mass filings. Hoffman Decl. ¶¶ 4–6, Exs. C, D & E § 12(i).

The challenged allegations fall into three categories: industry-wide accusations about mass arbitration (paragraphs 4 and 7); accusations about counsel's motives (paragraph 16); and accusations about unidentified nonparties' customer status, claims, and representation (paragraphs 21, 66, 68, and 69, and footnote 5). *See* Hoffman Decl. ¶ 15, Ex. M.

Paragraph 4 should be stricken. Hoffman Decl. ¶ 15, Ex. M ¶ 4. It attributes inadequate screening, duplicative representation, nonviable claims, and fee-pressure tactics to mass-arbitration counsel generally. It identifies no act by any Defendant and no fact about any Defendant's agreement. Evidence that other lawyers inadequately investigated other claims would not establish whether these Defendants accepted the Amended Terms or must arbitrate before NAM. Retaining the paragraph would require Defendants to answer a generalized indictment of a litigation practice and would serve only to associate Defendants' demands with alleged misconduct elsewhere.

Paragraph 16 should be stricken. Hoffman Decl. ¶ 15, Ex. M ¶ 16. It attributes a fee-pressure motive to counsel here, but it identifies no conduct affecting the formation or enforceability of any Defendant's agreement.[5] It invites discovery into counsel's strategy and settlement objectives, which are work product. *See* Fed. R. Civ. P. 26(b)(3)(B). And it asks the

---

[5] EarnIn's contention that Defendants filed as part of an effort to pressure EarnIn with disproportionate AAA fees is meritless. In connection with the 9,526 pending arbitrations, the AAA charged Claimants a $3,125 total initiation fee and charged EarnIn an $8,125 total initiation fee. Hoffman Decl. ¶13.

Court to view Defendants' exercise of their arbitration rights through an accusation about their lawyers.

Paragraph 7, including its press-release citation and URL, should be stricken. Hoffman Decl. ¶ 15, Ex. M ¶ 7. It describes regulatory criticism of arbitration practices and refers to claimants who are unaware, deceased, or represented by multiple firms, but it identifies no Defendant as falling within any of those categories. In *Lipsky*, the Second Circuit affirmed striking references to an SEC complaint resolved by a consent judgment without adjudication. 551 F.2d at 893–94. In *Lynch*, the court struck references to an attorney general "inquiry" that served "no purpose other than to inflame the reader." 278 F.R.D. at 68. Paragraph 7 is further removed still. It cites a press release about other companies.

Footnote 5[6] should be stricken. Hoffman Decl. ¶ 15, Ex. M at 16 n.5. It alleges "on information and belief" that some unidentified Claimants are deceased. It does not allege that any demand was filed for a deceased person, and it identifies no deceased Defendant. Compl. at 16 n.5. It would only invite a collateral investigation and cast suspicion on Defendants' own demands.

The second sentence of paragraph 66[7] should be stricken. Hoffman Decl. ¶ 15, Ex. M ¶ 66. It speculates about the accuracy of information supplied by unrelated claimants and about counsel's screening of them. That has nothing to do with whether these Defendants accepted the Amended Terms. *See* Compl. ¶¶ 56–65. Litigating it would force Defendants either to resist inquiry

---

[6] Compl. at 16 n.5 ("On information and belief, some Mass Arbitration Claimants are deceased, yet Labaton is still pursuing claims on their behalf.").

[7] Compl. ¶ 66 (challenged sentence: "Thereafter, on information and belief, the individuals within the Labaton Claimant Pool went through a streamlined online questionnaire process with little to no screening by Labaton to determine whether the individual provided accurate information, ever actually performed any Cash Out transactions or paid any fees or tips to EarnIn, has a viable claim, and fully understood the nature of the claim or even realized the type of representation they signed up for.").

into privileged advice, work product, and thousands of individuals' financial information, or to risk waiver.

The final sentence of paragraph 68[8] should be stricken. Hoffman Decl. ¶ 15, Ex. M ¶ 68. Its assertion that "vast swaths" of the claimant pool lack viable claims goes to the merits of nonparties' TILA claims. Proving it would require evaluating other people's transactions and defenses without resolving anything about these Defendants.

Paragraph 69[9] should be retained only through "during the relevant time period." Hoffman Decl. ¶ 15, Ex. M ¶ 69. The remaining language turns EarnIn's inability to verify certain individuals' transactions into accusations that counsel recruited non-customers and failed to investigate. An inability to verify a transaction within that period does not establish the absence of a customer relationship, and EarnIn alleges that each Defendant is a customer. The inference invites disputes over matching methods and counsel's work product.

Finally, paragraph 21[10] should be stricken. Hoffman Decl. ¶ 15, Ex. M ¶ 21. It accuses counsel of knowingly pursuing nonviable claims and refusing to vet them. EarnIn pleads the forum-related facts elsewhere. Compl. ¶¶ 72, 74. The rest invites inquiry into counsel's privileged

[8] Compl. ¶ 68 (challenged sentence: "The data exchange confirmed that vast swaths of the Labaton Claimant Pool lack any viable claim against EarnIn.").

[9] Compl. ¶ 69 (challenged language: "demonstrating both that Labaton's solicitation methods resulted in thousands of potential non-customers signing up for a mass arbitration against a company they have no relationship with, and suggesting that Labaton failed to perform even a modicum of diligence into whether the individuals within the Labaton Claimant Pool had cognizable claims against EarnIn.").

[10] Compl. ¶ 21 ("Due to the data exchange, Labaton knew that vast swaths of the Labaton Claimant Pool could not be confirmed as EarnIn customers during the relevant time period, lacked viable claims, or were contractually obligated to arbitrate their dispute with NAM. Despite this knowledge, in filing the Mass Arbitration Claimants' demands with AAA, Labaton refused to vet which of the individuals within the Labaton Claimant Pool were EarnIn customers with viable claims and which were required to arbitrate disputes with NAM.").

communications and work product. If EarnIn believes any forum-related allegation in paragraph 21 is necessary, it may seek leave to replead it.

The challenged language in paragraphs 21 and 69 and footnote 5 is also scandalous. It impugns counsel's integrity and has no bearing on these five Defendants' contracts. *See Brown*, 929 F.3d at 51 n.42.[11]

In sum, this material has no place in a case involving five individual consumers and a contract dispute, and this Court should strike it.

### D. Retaining the Allegations Would Prejudice Defendants, and No Background or Equitable Rationale Justifies Them.

Defendants would be prejudiced if these allegations stand. They would have to answer accusations about unrelated individuals' customer status, deaths, claims, and representation. Discovery would be disproportionate, would reach confidential data on thousands of nonparties, and would intrude on privilege and work product. In *Birner v. Kensington Vanguard Holdings, LLC*, the court struck unrelated statutory-violation allegations, citing "substantial prejudice . . . in the form of unnecessary discovery costs and reputational harm," while retaining allegations that supplied relevant context. No. 24-CV-2743-LTS-JW, 2025 WL 963311, at *9 (S.D.N.Y. Mar. 31, 2025). The proposed deletions follow that line.

Calling these accusations background does not help. Courts retain allegations that supply context for a pleaded claim but strike those that accuse a party of misconduct not at issue. *Id.*, 2025 WL 963311, at *9; *see Lynch*, 278 F.R.D. at 67–69. The deletions leave intact every allegation explaining how the forum dispute arose.

---

[11] In this context, "scandalous" refers to an allegation that "unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court." *Anderson v. Davis Polk & Wardwell LLP*, 850 F. Supp. 2d 392, 416 (S.D.N.Y. 2012) (quoting 2 James Wm. Moore et al., *Moore's Federal Practice* ¶ 12.37[3] (3d ed. 2010)).

Nor does the discretionary nature of declaratory relief make these accusations relevant. EarnIn has not connected counsel's alleged conduct to the relief sought against Defendants. And even accepted as true, the accusations would not bear on the declarations sought.

If the Court declines dismissal, it should strike these passages and direct EarnIn to file a conforming pleading. Any declaration should also be limited to the named Defendants. Prayer paragraph (a) seeks an unqualified declaration that the Amended Terms are "valid and enforceable." It should be confined to the defendant-specific controversy pleaded in paragraphs 80 through 85. *See* Compl. ¶¶ 22, 85; *Taylor*, 553 U.S. at 893–95.

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction or, alternatively, decline to entertain this declaratory judgment action under 28 U.S.C. § 2201(a) and dismiss or stay it pending the AAA proceedings. If the Court declines to dismiss the Complaint, Defendants request that it strike the challenged allegations pursuant to Rule 12(f). Defendants further request such other and further relief as the Court deems just and proper.

Dated: November 2, 2026

Respectfully submitted,

**LABATON KELLER SUCHAROW LLP**

*/s/ Thomas G. Hoffman, Jr.*
Thomas G. Hoffman, Jr.
Jonathan D. Waisnor
Morris Dweck
Alexander Schlow
Eric Robert Freiman
140 Broadway
New York, New York 10005
Telephone: 212.907.0700

Facsimile: 212.818.0477
thoffman@labaton.com
jwaisnor@labaton.com
mdweck@labaton.com
aschlow@labaton.com
efreiman@labaton.com

**BERGER MONTAGUE, P.C.**
John G. Albanese *(Pro Hac Vice Pending)*
Ariana B. Kiener *(Pro Hac Vice Pending)*
1229 Tyler Street NE, Suite 205
Minneapolis, MN 55413
Telephone: 612.594.5997
jalbanese@bergermontague.com
akiener@bergermontague.com

*Counsel for the Defendants*

**CERTIFICATION OF COMPLIANCE**

I hereby certify that the word count of this affirmation complies with the word limits of Local Rule 7.1(c). According to the word-processing system used to prepare this affirmation, the total word count for all printed text exclusive of the material omitted under Local Rule 7.1(c) is 8,444 words.

*/s/ Thomas G. Hoffman, Jr.*
Thomas G. Hoffman, Jr.